**Armin MARTINEZ, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 09-14-00377-CR**

Court of Appeals of Texas, Beaumont.

Submitted on October 5, 2015

Opinion Delivered July 27, 2016

Discretionary Review Refused November 16, 2016

---

Brittany Carroll Lacayo, Houston, TX, for Armin Martinez

Logan Pickett, District Attorney, Stephen C. Taylor, Assistant District Attorney, Liberty, TX, for the State of Texas

Before McKeithen, C.J., Horton and Johnson, JJ.

## OPINION

HOLLIS HORTON, Justice

Arguing that he did not violate a traffic law that prohibits a person from displaying an obscured license plate, Armin Martinez seeks to overturn the trial court's denial of his motion to suppress, a motion asking the trial court to suppress evidence that police found a large sum of money when they searched Martinez's car. *See* Tex. Penal Code Ann. § 34.02(a) (West Supp. 2015) (defining the elements of the offense of money laundering); Tex. Transp. Code Ann. § 504.945 (West Supp. 2015)[1] (creat-

---

1. Because the amendments to section 504.945     of the Transportation Code do not affect the

ing an offense for the display of wrong, fictitious, altered, or obscured license plates). In one issue, supported by four separate arguments, Martinez contends the evidence should have been suppressed because (1) the trial court erred in finding that the stop was justified; (2) the police did not have reasonable suspicion to justify Martinez's continued detention while completing their investigation into whether he was driving a car with an obscured plate; (3) he did not voluntarily consent to the request that police made of him asking to search his car; and (4) section 504.945 of the Texas Transportation Code, the statute that regulates obscured plates, is unconstitutionally vague on its face and as it was applied under the facts of this case.

In response to these arguments, the State contends the trial court's ruling denying Martinez's motion to suppress should be upheld. According to the State, the evidence supports the trial court's findings and its conclusion to deny Martinez's motion. With respect to Martinez's arguments, the State argues (1) that the police developed reasonable suspicion the plate was obscured, justifying the stop of Martinez's car; (2) that the evidence showed Martinez voluntarily consented to the search; (3) that Martinez was not detained for an undue period of time; and, (4) that section 504.945 of the Texas Transportation Code is constitutional on its face and as applied to Martinez in this case. After reviewing the parties' arguments, we conclude the trial court did not abuse its discretion by denying Martinez's motion. We further conclude that section 504.945 is not void for vagueness or as applied to Martinez under the circumstances of this case.

## Background

During the hearing the trial court conducted on Martinez's motion to suppress, the officer who stopped Martinez described in detail the events that resulted in Martinez's car [2] being searched. According to the officer, who is employed by the Liberty County Sheriff's Department, he stopped Martinez's car to investigate his suspicion that the car had an obscured rear license plate. *See* Tex. Transp. Code Ann. § 504.945 (pertaining to offenses involving wrong, fictitious, altered, or obscured license plates). After stopping the car, the officer checked Martinez's out-of-state plate through a database available to police officers, and he learned that eight days before, another Liberty County deputy had stopped the same car in Liberty County. The officer explained that he could not tell from the information he received on the car's history whether Martinez had been driving the car when it was previously stopped.

After stopping Martinez, the officer approached Martinez's car. Martinez told the officer that he lived in Chicago, and that he was traveling to the Houston area to visit his children. In the hearing, the officer related that when he initially encountered Martinez after the stop, he thought that Martinez seemed nervous. During the stop, Martinez told the officer that he had

resolution of the appeal, the opinion cites the current version of the statute.

**2.** The information developed in the stop indicates that Martinez initially told the officer he recently purchased the car, but later in the search, the registration that Martinez produced to the officer indicated that the car Martinez was driving was owned by another person. In the opinion, we refer to the car Martinez was driving as "his car" to indicate that Martinez was the sole person occupying the car when it was stopped. By referring to the car as "his car," we do not intend to imply that the evidence established that Martinez actually owned the car based on the registration documents given to the officer.

been stopped earlier that day in Arkansas due to a problem with the car's taillight, and that the car had been searched. Additionally, Martinez told the officer that he had not been given a citation or a warning in Arkansas. According to the officer, Martinez also stated that he had been in Houston one month earlier.

During the hearing, the officer described that he had significant prior experience in enforcing drug laws. The testimony from the hearing indicates that prior to the day the officer stopped Martinez, the officer had been involved in hundreds of cases involving individuals who were involved in trafficking narcotics or money. The officer explained that he thought Martinez's account about going to Houston to visit his children was inconsistent with the information that the car Martinez was driving had previously been stopped in Liberty County just eight days earlier. To investigate his suspicions about Martinez and the use of the car, the officer indicated that he used the information from Martinez's license to run a background check on Martinez through the El Paso Intelligence Center (EPIC), an agency used by law enforcement officers to determine if active cases exist with other law enforcement agencies on individuals being investigated for crimes. According to the officer, an individual with EPIC told him that EPIC's information indicated that Martinez had an active case in Chicago, which was being handled by the Drug Enforcement Administration (DEA). On learning that Martinez had an active case with the DEA, the officer indicated that he suspected Martinez might be using the car to transport narcotics or money.

To resolve his suspicion that Martinez might be using the car for an illegal purpose, the officer telephoned the contact given to him by EPIC, who the officer understood was handling Martinez's case

with the DEA. According to the officer, after contacting the DEA agent, the DEA agent told him that Martinez was associated with an organization known to use cars like the one Martinez was driving to transport contraband. The DEA agent also told the officer that the DEA believed that Martinez's organization had sent someone "down" to pick up a large amount of cocaine, and that Martinez might be that person.

After speaking with the DEA agent, the officer indicated that he approached Martinez again and asked Martinez if he would allow the car to be searched. A video recording of the stop, admitted into evidence during the hearing, shows that Martinez did not hesitate when he consented to the requested search. In the search that followed, police found bundles concealed beneath the front fenders of the car. After finding the hidden bundles, Martinez was arrested and taken to the police station. At the station, the police determined that the bundles contained more than $238,000 in bills.

Subsequently, Martinez was charged with money laundering. Before trial, Martinez filed a motion to suppress all the evidence found by police in the search of his car. In his motion, Martinez argued that he had been stopped and arrested without reasonable suspicion. He also argued that section 504.945 of the Transportation Code, the section creating a traffic offense for displaying obscured plates, was unconstitutionally vague.

During the hearing, the trial court considered whether reasonable suspicion existed to believe that a violation of section 504.945 of the Texas Transportation Code had occurred, whether the stop had been unduly prolonged in light of the stop's initial purpose, whether Martinez voluntarily consented to the search, and whether section 504.945 of the Transportation

Code should be declared unconstitutionally vague, either on its face or as it was applied to Martinez by the police. Three witnesses testified during the hearing, including the two officers who were principally involved in the stop and the search of Martinez's car. After considering the evidence, including a video recording of the entire stop, the trial court denied Martinez's motion. The trial court explained during the hearing that the evidence showed the frame around the plate interfered with a person's ability to read the name of the state as it appeared on the plate.

Approximately one week later, Martinez pleaded guilty to money laundering. During the hearing on his plea, the trial court found the evidence supported a finding of guilt. However, the trial court deferred finding Martinez guilty, and instead, placed Martinez on community supervision for ten years. Several months later, the trial court rendered written findings and conclusions, explaining in detail the reasons it had denied Martinez's motion. In its findings, the court found:

- that the car Martinez was driving when he was stopped displayed a license plate that violated section 504.945 of the Texas Transportation Code;
- that the car Martinez was driving had been registered in the State of Illinois;
- that the officer stopped the car on U.S. Highway 59 in Liberty County, Texas;
- that before contacting Martinez, the officer learned that the car Martinez was driving had been stopped in Liberty County less than two weeks before by another Liberty County sheriff's deputy;
- that within two minutes of speaking with Martinez, Martinez told the officer that he had been stopped in the car in Arkansas and searched, and that he was not given a ticket, citation, or otherwise detained;
- that Martinez told the officer he had recently purchased the car;
- that within two minutes of speaking to Martinez, Martinez told the officer that he had last been in Houston a month before;
- that the officer contacted EPIC to further investigate his suspicions;
- that EPIC maintains a database of information for law enforcement officers on individuals that are involved in criminal activity;
- that the officer learned from EPIC that Martinez had an "active record" for trafficking;
- that a person with an "active record" is a person currently under investigation for trafficking of narcotics or other contraband;
- that a DEA agent with whom the officer spoke told him the criminal organization they believed Martinez to be associated with used cars of the same type as the one Martinez was driving when he was stopped to transport contraband;
- that the agent informed the officer that the organization had sent someone from Illinois one day before to acquire cocaine;
- that the agent told the officer that the organization was known to hide contraband in the front wheel wells of the cars;
- that approximately twenty-one minutes after being contacted by the officer, Martinez provided the officer the car's registration;
- that the registration indicated that Maribel Marrufo owned the car;

- that Martinez told the officer that Marrufo owned the vehicle, contrary to his initial claim of ownership;
- that the officer requested Martinez's consent to search the car approximately twenty-two minutes and forty-two seconds after he began speaking with Martinez;
- that Martinez consented to the search immediately after the request was made;
- that Martinez was not threatened or coerced, and he freely and voluntarily consented to the search;
- that Martinez speaks and understands English;
- that the search of the car revealed over $238,000 located in sixteen plastic wrapped and electric taped bundles hidden in the wheel wells of Martinez's car;
- that while Martinez was detained, the officer worked diligently to confirm or dispel his suspicions about Martinez; and
- that the officer's testimony was completely credible.

In addition to making findings of fact, the trial court rendered the following conclusions of law:

- that the officer had reasonable suspicion to believe that he had observed Martinez violate section 504.945 of the Texas Transportation Code;
- that the initial stop of the car was lawful;
- that the officer reasonably suspected that criminal activity occurred and was justified in continuing to detain Martinez after the initial reason for the stop had ended;
- that reasonable suspicion remained and continued through the time that the officer requested Martinez to allow the car to be searched;

- that Martinez was never unlawfully detained;
- that Martinez knowingly, voluntarily, and intelligently consented to the requested search of the car; and
- that Section 504.945 of the Transportation Code gives defendants sufficient notice of the conduct that it prohibits, and it is not unconstitutionally vague.

Standard of Review

■■■ As an intermediate appeals court, we review a trial court's ruling on a motion to suppress under a bifurcated standard, which depends on whether the matter resolved by the trial court is characterized as a question of fact, a mixed question of fact and law, or a pure question of law. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App.2007). In reviewing the trial court's decision on such motions, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Flores v. State*, 177 S.W.3d 8, 14 (Tex.App.–Houston [1st Dist.] 2005, pet. ref'd). Instead, with respect to suppression hearings, the trial judge has the responsibility to act as the sole trier of fact, giving it the duty to evaluate the credibility of the witnesses and to decide what weight to assign each witness's testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex.Crim.App.2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex.Crim.App. 2006).

■■■ Given the standard of review that applies to suppression rulings, an intermediate appellate court must give almost total deference to the trial court's rulings when they revolve around historical facts. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09

(Tex.Crim.App.2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002). Appellate courts also give almost complete deference to the trial court's ruling when that court's application of search and seizure law turns on determining questions of fact. *Id.* However, if the trial court's ruling concerned a matter resolved by a pure application of the law, or if the trial court's application of the law to the facts did not turn on matters of credibility or demeanor, the ruling is reviewed using a de novo standard. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim.App.2005); *Johnson*, 68 S.W.3d at 652–53.

■ The law protecting citizens from unreasonable searches is settled. The Fourth Amendment protects citizens against unreasonable searches or unreasonable seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. A traffic stop for a suspected violation of law constitutes a "seizure" of the occupants of the vehicle; therefore, the seizure must be conducted in accordance with the Fourth Amendment. *Heien v. North Carolina*, —— U.S. ——, 135 S.Ct. 530, 536, 190 L.Ed.2d 475 (2014).

■ To suppress evidence for an alleged Fourth Amendment violation, the defendant bears the initial burden of rebutting the presumption that the police acted properly. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim.App.2009), *cert. denied*, 558 U.S. 1093, 130 S.Ct. 1015, 175 L.Ed.2d 622 (2009). A defendant satisfies his initial burden if he establishes that the search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant shows he was searched or his property was seized without a warrant, the burden shifts to the State to establish that the search and the seizure were reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899,

902 (Tex.Crim.App.2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). In evaluating a trial court's suppression ruling, we must keep in mind that the "touchstone of the Fourth Amendment is reasonableness, not individualized suspicion." *Samson v. California*, 547 U.S. 843, 855 n. 4, 126 S.Ct. 2193; 165 L.Ed.2d 250 (2006). In evaluating whether a given search was reasonable, we evaluate it in relation to the search's "scope and manner of execution." *Maryland v. King*, —— U.S. ——, 133 S.Ct. 1958, 1970, 186 L.Ed.2d 1 (2013).

■ A defendant's temporary detention following a traffic stop may be justified on less than probable cause if the evidence from the hearing establishes specific and articulable facts showing that the police reasonably suspected the defendant was or soon would be involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim.App.2000). Reasonable suspicion is proven to exist if, from the totality of the circumstances, the facts the officer articulates indicate that a reasonable person would have believed that the individual being detained was or soon would be engaged in criminal activity. *Ford*, 158 S.W.3d at 492–93. This objective standard requires courts to look solely at whether an objective basis for the stop existed, as the evaluation disregards the officer's subjective intent. *Id.*

■ Importantly, when based on reasonable suspicion, the legality of the stop does not depend on the State proving that the individual who was stopped actually committed a traffic offense. Instead, the legality of the stop may be proven by evidence that shows an objectively reasonable officer would have believed that an offense was in progress,

given the facts that were articulated by the officer during the hearing. *Fernandez v. State*, 306 S.W.3d 354, 357 (Tex.App.–Fort Worth 2010, no pet.). Therefore, to determine whether the stop was reasonable, we must decide if the evidence at the hearing reveals sufficient facts to show that a reasonable officer would have developed suspicion that the plate on Martinez's car violated the obscured-plate statute. *See Martinez v. State*, 348 S.W.3d 919, 923 (Tex.Crim.App.2011). Generally, reasonable suspicion requires the State to demonstrate in the hearing only "some minimal level of objective justification" to justify the initial stop. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex.Crim.App.2012).

In Martinez's case, in denying Martinez's motion to suppress, the trial court explained that it found the testimony of the officer who stopped Martinez's car for having an obscured plate to be completely credible. In other words, the trial court did not question the officer's honesty regarding the degree to which he thought that the frame holding the rear plate on the car obscured the name "ILLINOIS." Therefore, the question is whether an objectively reasonable officer would have suspected that the plate described by the officer who decided to stop Martinez was obscured to such a degree that a reasonable officer would suspect that the obscured-plate statute had been violated. *See Heien*, 135 S.Ct. at 536, *see also Fernandez*, 306 S.W.3d at 357. And, as the officer's perception about the degree to which the plate was obscured when he first noticed Martinez's car concerns a matter of historical fact, it is a matter on which the trial court is afforded almost complete deference. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim.App.2010).

### Reasonable Suspicion for Stop

We address Martinez's arguments in order, starting with his argument that the officer who pulled him over was not justified in believing that the plate on Martinez's car violated section 504.945 of the Transportation Code. *See* Tex. Transp. Code Ann. § 504.945. During the suppression hearing, the officer who stopped Martinez testified that the frame, by partially covering five of the letters in the word "ILLINOIS," made "it hard to read the license plate." Photographs of the rear plate on Martinez's car were admitted into evidence during the hearing. The photos show that the frame holding the plate partially covers five of the eight letters of the state's name.

Martinez argues that the officer did not have sufficient cause to initiate the stop because his license plate frame, as a matter of fact, did not obscure half of the state's name in violation of section 504.945(a)(7)(B) of the Transportation Code. *See* Tex. Transp. Code Ann. § 504.945(a)(7)(B). Martinez argues that in determining if half of the name "ILLINOIS" was obscured, courts should apply a mathematical approach, and determine whether one-half of the area of the field containing the state's name was in fact covered by the frame. However, deciding if reasonable suspicion existed to stop Martinez does not depend on the State proving that he actually violated a traffic law; instead, reasonable suspicion to justify the stop exists if the evidence at the hearing established that an objectively reasonable officer would have viewed Martinez's plate as having been obscured by the frame to the degree that it violated section 504.945 of the Transportation Code. *See Heien*, 135 S.Ct. at 536; *see also Fernandez*, 306 S.W.3d at 357. In reviewing the ruling at issue, as the ruling did not involve a pure application of law, the trial court's findings and conclusions in our review are given almost complete deference. *See Crain*, 315 S.W.3d at 48.

With respect to whether the officer's view of the statute was reasonable, we are to construe the statute "according to its plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the legislature could not have intended." *Williams v. State,* 253 S.W.3d 673, 677 (Tex.Crim.App.2008). Section 504.945(a)(7)(B) provides that a person commits an offense by attaching or displaying a license plate to a car that "has a coating, covering, protective substance, or other material that ... alters or obscures one-half or more of the name of the state in which the vehicle is registered[.]" *See* Tex. Transp. Code Ann. § 504.945(a)(7)(B). Because the statute does not define obscure, we apply its plain meaning. *See Parker v. State,* 985 S.W.2d 460, 464 (Tex. Crim.App.1999); *see also* Tex. Gov't Code Ann. § 311.011(a) (West 2013). "Obscure" is defined as "to conceal or hide from view as by or as if by covering wholly or in part[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 1557 (2002). This definition illustrates that an objectively reasonable person, familiar with the statute, could reasonably conclude that a frame on a license plate, which obscured more than half of the letters in the state's name in a way that made them difficult to read, had violated the obscured-plate statute, regardless of whether exactly one-half of the area containing the field provided for the state's name on the plate was in fact covered by the frame.

In Martinez's case, the trial court did not find that Martinez was stopped for any reason other than driving a car that was displaying an obscured plate. *See Amador v. State,* 275 S.W.3d 872, 878 (Tex.Crim. App.2009). Additionally, the trial court found that the officer had reasonable suspicion to believe that Martinez violated

section 504.945 of the Texas Transportation Code. We interpret the finding to mean that the trial court determined the officer had an objectively reasonable basis justifying his decision to stop Martinez's car. The trial court's finding and its conclusion regarding the justification for the initial stop are not objectively unreasonable, given the evidence the trial court considered in the hearing.

We hold the trial court did not abuse its discretion in finding the officer had an objectively reasonable basis to believe the frame obscured the plate of Martinez's car to such a degree that the plate violated the provisions of section 504.945 of the Texas Transportation Code. *See Valtierra v. State,* 310 S.W.3d 442, 447 (Tex.Crim.App. 2010). Consequently, we agree with the trial court's finding that the initial stop of Martinez's car was justified. *See Derichsweiler,* 348 S.W.3d 906, 914 (Tex.Crim. App.2011). While Martinez argues that less than fifty percent of the total area of the state's name was obscured by the plate's frame, we do not agree with Martinez that the State was required to prove that an actual violation of the State's traffic laws occurred to justify an officer's decision to stop the car to investigate whether a violation had in fact occurred. *See Heien,* 135 S.Ct. at 536–39; *see also Derichsweiler,* 348 S.W.3d at 914.

In his brief, Martinez argues that an officer's mistaken understanding of the Transportation Code cannot justify the stop. However, the cases that Martinez cites in his brief were all decided before the United States Supreme Court decided *Heien,* which holds that an officer's objectively reasonable mistake in interpreting the law justifies a temporary detention that results following a traffic stop.[3] *See*

---

3. We do not hold, and we do not imply, that the officer was mistaken in the manner he

interpreted the obscured-plate statute. Our holding is that the officer's interpretation of

*Heien,* 135 S.Ct. at 536–39. Importantly, Martinez was not cited by the officer for violating the Transportation Code. Here, Martinez's appeal concerns the question of whether the stop was justified, and we need not decide if the evidence at the hearing proved that the frame around the plate obscured the plate as a factual matter to the degree that Martinez could have been cited for violating section 504.945 of the Transportation Code. We conclude the trial court's finding that the stop was valid is supported by the evidence admitted in the hearing.

### Prolonged Detention

██ In the second argument Martinez advances to support his claim that the trial court's ruling on the motion to suppress should be overturned, Martinez suggests that he was stopped for a period longer than reasonably needed for the officer to investigate whether his car had an obscured plate. According to Martinez, the officer completed the investigation required to determine whether the car's plate was obscured just minutes after he was stopped, and the officer had no legitimate basis to justify the time it took to complete the investigation, given the initial purpose of the stop.

██ Under the Fourth Amendment, a person can be detained no longer than is necessary to effectuate the purpose of a valid traffic stop. *See Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). In investigating a traffic violation, an officer is to use the least intrusive means reasonably available to the officer to verify or dispel the suspicion that led to the stop. *Id.* However, after an officer makes a valid stop, the detention is not unduly prolonged when the officer asks the driver for information about his destination, the purpose for the trip, whether he can produce a valid driver's license, whether he can produce information to establish who actually owns the car, and whether he has documents showing that a valid insurance policy exists covering the car. *See Kothe v. State,* 152 S.W.3d 54, 63 (Tex.Crim.App.2004); *Davis v. State,* 947 S.W.2d 240, 245 n. 6 (Tex.Crim.App.1997); *Caraway v. State,* 255 S.W.3d 302, 307–08 (Tex.App.–Eastland 2008, no pet.); *Lambeth v. State,* 221 S.W.3d 831, 836 (Tex. App.–Fort Worth 2007, pet. ref'd). Thus, the reasonableness of the duration of a stop does not depend solely on the time needed to determine whether a traffic offense actually occurred. *See Love v. State,* 252 S.W.3d 684, 687 (Tex.App.–Texarkana 2008, pet. ref'd).

██ In gathering the types of information typically associated with a traffic stop, an objectively reasonable officer may form a reasonable suspicion that some crime other than a traffic violation is afoot. *United States v. Sharpe,* 470 U.S. 675, 685–86, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). If so, the focus in determining whether the detention is prolonged shifts to evaluating whether those suspicions were objectively reasonable, and whether they were investigated in a manner designed to quickly confirm or dispel them. *Belcher v. State,* 244 S.W.3d 531, 539 (Tex. App.–Fort Worth 2007, no pet.). In evaluating a complaint about an allegedly prolonged detention, courts are allowed to consider whether legitimate law enforcement purposes are served by any delays that arose during the investigation. *Id.* In reviewing complaints about allegedly prolonged detentions, we look at the totality of the circumstances developed during the stop to determine if there is evidence in the record supporting the trial court's conclusion that reasonable suspicions existed

the obscured-plate statute, given its language,   is objectively reasonable.

justifying the defendant's detention while the officer investigated matters that extended beyond the initial reason for the stop. *See United States v. Sokolow,* 490 U.S. 1, 8–9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App.1997). Although a detention that follows a traffic stop may become unduly prolonged, there is no rigid, bright-line rule governing the amount of time that detentions should take. *Sharpe,* 470 U.S. at 679, 105 S.Ct. 1568.

In Martinez's case, the officer pointed to various facts indicating why, at each step of the process involved in the stop, he decided to further investigate his suspicion that Martinez might be using the car in a trafficking operation. *See Derichsweiler,* 348 S.W.3d at 914; *see also United States v. Place,* 462 U.S. 696, 709–10, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). For example, in the hearing, the officer pointed to the fact that he was aware that Martinez's car had been stopped eight days earlier in Liberty County by another sheriff's deputy, a fact not entirely consistent with the statement Martinez made to the officer that the car belonged to him and that he had last been in the area approximately one month, not eight days, earlier. Additionally, the trial court could view Martinez's statement that he had been stopped and his car searched earlier that day in Arkansas as an indication that Martinez desired to avoid the officer asking him for permission to search his car. After the officer developed facts that would have made an objectively reasonable officer suspicious about the purpose of Martinez's travel into Liberty County on the day the stop occurred, the officer called EPIC and then called the DEA, where he learned that Martinez was currently involved in a case that involved trafficking in Chicago, and that Martinez's associates were believed to have sent a car like the one Martinez was driving into Texas in connec-

tion with the organization's illegal business. Based on the facts as they were developed by the officer during the stop, the trial court could reasonably conclude that the officer developed objectively reasonable information at each step of the investigation to continue to investigate Martinez even after the initial purpose of the stop ended. *See Love,* 252 S.W.3d at 687 (allowing an officer to investigate to confirm or dispel suspicions).

We also consider whether the officer diligently pursued his investigation into his suspicions in ways that were likely to quickly confirm or dispel them. *See Belcher,* 244 S.W.3d at 539. The testimony at the hearing indicates that the officer called EPIC to investigate his suspicion that the car might be part of a trafficking operation. The record shows that the officer contacted EPIC approximately five minutes after the initial stop occurred; based on that information, the officer then called the DEA agent, the person identified by EPIC as the individual associated with Martinez's active case with the DEA. The officer's contact with the DEA agent occurred over a period of approximately four minutes. The evidence before the trial court allowed the trial court to conclude that the officer contacted sources likely to quickly confirm or to dispel the officer's suspicions about Martinez and the manner he was using the car. After the officer contacted the DEA agent, he left his SUV and asked Martinez for the car's registration documents, explaining that the temporary license plate made it difficult to verify who owned the car. After checking the registration and insurance documents, steps that occurred approximately twenty-three minutes after the stop began, the officer returned to Martinez and asked him if he could search the car. Martinez did not question the officer's request, and immediately authorized the search. The

record supports the trial court's conclusions that it was reasonable for the officer to continue to investigate for the entire period before Martinez's arrest, and that the officer diligently pursued his investigation into whether Martinez was using the car in a trafficking operation.

The video recording of the stop is in the record, and it is consistent with the officer's account about what happened during the stop. We conclude that the evidence developed in the suppression hearing shows the officer pointed to specific facts that allowed the trial court to conclude that an objectively reasonable officer would have suspected that criminal activity was afoot, that the investigation occurred in a reasonably short period of time, and that the officer investigated his suspicion about the car's use in a manner reasonably designed to quickly resolve whether Martinez was involved in a trafficking operation. We hold that the record supports the trial court's conclusion that Martinez's detention was not unduly prolonged.

### Consent to Search

Martinez also argues the State failed to prove that he voluntarily consented to the officer's request to search his car. According to Martinez, his consent was involuntary under circumstances showing that he had been stopped for approximately twenty-three minutes before the lead officer asked whether the car could be searched, that he was never informed of his right to refuse the requested search, that two officers, other than the lead officer, were standing nearby when he was asked to allow the search to occur, that the lead officer did not return Martinez's driver's license to him before he authorized the officer to search his car, and that before the search, he was never told by anyone that he was free to leave.

The State argues that Martinez voluntarily consented to the search. "Voluntary consent to search is a well-established exception to the warrant and probable cause requirements of the Fourth Amendment to the United States Constitution." *Montanez*, 195 S.W.3d at 105. Under Texas law, and based on article I, section 9 of the Texas Constitution, the State must prove that the defendant consented to a search voluntarily by clear and convincing evidence. *Id.* For a defendant to voluntarily consent to a requested search, the consent must " 'not be coerced, by explicit or implicit means, by implied threat or covert force.' " *Carmouche*, 10 S.W.3d at 331 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Or, stated another way, the State must show that the defendant's consent was given freely, unequivocally, and without duress or coercion. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex.Crim.App. 1991).

In a suppression hearing, the trial court must examine whether the defendant's consent was voluntary from the "totality of the circumstances from the point of view of an objectively reasonable person, including words, actions, or circumstantial evidence." *Tucker v. State*, 369 S.W.3d 179, 185 (Tex.Crim.App.2012). Just as "reasonableness" is the touchstone of the Fourth Amendment, "reasonableness" is also the touchstone for determining whether a defendant voluntarily consented to a search. *See Meekins v. State*, 340 S.W.3d 454, 459 (2011). In evaluating if a defendant voluntarily consented to a search, the ultimate question is whether the person's " 'will ha[s] been overborne and his capacity for self-determination critically impaired[.]' " *Meekins*, 340 S.W.3d at 459 (quoting *U.S. v. Watson*, 423

U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (other citations omitted)). "If the record supports a finding by clear and convincing evidence that consent to search was free and voluntary, we will not disturb that finding." *Carmouche*, 10 S.W.3d at 331.

With respect to Martinez's claim that his consent was involuntary, the trial court expressly found that Martinez's "consent was freely and voluntarily given." That finding, like the trial court's other findings of the historical facts, is a finding on which the trial court is given almost complete deference. *See Montanez*, 195 S.W.3d at 108–109 (explaining that a clearly erroneous standard, which requires the appeals court to give deference to the trier of fact, applies to the review of a ruling from a suppression hearing that addressed whether the defendant voluntarily consented to the search in a case that included a video recording that captured what occurred in the stop). The video recording shows that Martinez consented to a search of his car immediately after the lead officer asked Martinez if he could search his car. While none of the evidence showed that Martinez was told he could refuse or that he was free to leave, the State was not required to prove that Martinez was aware he could refuse or to prove that Martinez knew he was free to leave to show that his consent was voluntary. *See Schneckloth*, 412 U.S. at 232–33, 93 S.Ct. 2041 (refusing to accept the argument that "proof of knowledge of the right to refuse consent is a necessary prerequisite to demonstrating a 'voluntary' consent"). While Martinez points to several other facts, such as the fact that the lead officer held his license, that two additional officers were standing near him when the request was made, and that approximately twenty-three minutes passed after he was initially stopped before he was asked to allow the search, the question of whether a defendant's consent was voluntary is a matter the trial court resolved as a mixed question of law and fact. As a mixed question, the trial court was entitled to consider the circumstances as a whole; it was not required to consider only the factors Martinez identifies in isolation from all of the other facts regarding the officer's suspicion that Martinez was using the car to facilitate a crime. *See Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (noting that voluntariness of the defendant's consent to a search is a question of fact that is to be determined from all of the circumstances); *Stephenson v. State*, 494 S.W.2d 900, 904 (Tex.Crim.App. 1973) (noting that the question of voluntariness of the defendant's consent presented a mixed question of law and fact, and that facts inconsistent with the trial court's finding are evaluated in context and in relation to all of the facts that are relevant to the search). The trial court could reasonably conclude from the video recording and all of the circumstances regarding the search that Martinez's consent was not coerced by explicit or implicit means. *See Carmouche*, 10 S.W.3d at 331.

Here, while Martinez complains about the time it took before he was asked to allow the search, we have previously explained that the trial court could reasonably view the amount of time it took prior to the search as reasonable. The evidence also does not show that Martinez was arrested before his car was searched, it does not show that he was told he would be arrested if he refused to allow the search, and it does not show that he was told he was not free to leave before being asked to consent to the search. Moreover, the record does not suggest that Martinez would not have authorized the lead officer to search the car had there been fewer offi-

cers on the scene, had his license been returned before he was asked for permission, or had the investigation taken less time. Viewing the evidence in the light most favorable to the trial court's ruling, and giving the trial court's ruling almost total deference, we hold the trial court did not abuse its discretion by finding that Martinez voluntarily consented to the search.

### Constitutional Challenge to Section 504.945

Last, Martinez argues that section 504.945 of the Transportation Code is unconstitutionally vague. In support of this argument, Martinez argues that the statute is unconstitutional both facially and as applied to the facts in his case. According to Martinez, section 504.945 is vague because it fails to clearly identify the persons who the State can prosecute for violating the statute. For instance, Martinez suggests that the statute is not clear regarding whether it applies to an individual who neither owned the car, nor put the plate on it, but whose only involvement is driving.

However, Martinez was not issued a citation for having an obscured plate. And, we note that no court has held section 504.945 of the Transportation Code void on the basis that it is vague. Moreover, in Hernandez's case, the issue before us is whether it would have been objectively reasonable for individuals familiar with section 504.945 to believe that it applied to drivers who were driving cars while displaying an obscured plate, given that no cases have indicated it does not apply to those who are driving cars with obscured license plates. *See Heien,* 135 S.Ct. at 540. Because Martinez was not cited for violating the obscured-plate statute, the constitutionality of the statute need not be re-solved to decide the issues that are ripe in Martinez's appeal. *Id.*; *see also* Tex. R. App. P. 47.1 (requiring the appeals court to address only issues that are necessary to the final disposition of the appeal).

■■■■■ Even if the constitutionality of section 504.945 were a matter that must be decided, we would nevertheless conclude the statute applies to drivers who drive vehicles on public roads while displaying obscured plates. *See Williams,* 253 S.W.3d at 677 (requiring statutes to be interpreted according to their "plain language, unless the language is ambiguous or the interpretation would lead to absurd results that the legislature could not have intended"). When statutes are not ambiguous, we assume the Legislature meant what the statute expresses, and a court should not add or subtract from the statute's meaning. *See Tapps v. State,* 294 S.W.3d 175, 177 (Tex.Crim.App.2009). In construing a statute's meaning, courts presume that statutes passed by the Legislature are valid, and presume that the Legislature did not act unreasonably or arbitrarily in creating the law. *See Ex parte Lo,* 424 S.W.3d 10, 14–15 (Tex.Crim.App.2013). Normally, the burden to establish that a statute is unconstitutional "rests upon the person challenging the statute[.]" *Id.* at 15. When a statute has been challenged as unconstitutionally vague as it is being applied, a court "need only scrutinize the statute to determine whether it is impermissibly vague as applied to the challenging party's specific conduct." *Bynum v. State,* 767 S.W.2d 769, 774 (Tex.Crim.App.1989). A statute will be held to be invalid if the statute does not give a person of ordinary intelligence a reasonable opportunity to know what conduct the statute prohibits. *See State v. Holcombe,* 187 S.W.3d 496, 499 (Tex.Crim. App.2006).

In support of his argument challenging the validity of the obscured-plate statute, Martinez relies on the dissenting opinion of Justice Meyers in *State v. Johnson*, 219 S.W.3d 386, 390–91 (Tex.Crim.App.2007). Justice Meyers considered an obscured-plate statute[4] similar to the one at issue here, and in dissent, described that statute as unconstitutionally vague because it was not sufficiently clear regarding whether the owner or the driver of the car was the party the Legislature intended to hold responsible for displaying an obscured plate. *Id.* However, in *Johnson*, the majority of the Court of Criminal Appeals affirmed a driving while intoxicated conviction based on a stop justified by the driver's display of an obscured license plate. *Id.* at 388. Thus, to the extent precedent exists on a similar predecessor version of the statute, the majority of the Court of Criminal Appeals applied that statute to the driver of the car. *Id.*

Regardless of the conflict between the justices who decided *Johnson*, section 504.945, in our opinion, is not vague regarding its application to those who drive cars on public roads. With respect to who can violate section 504.945, the statute includes those who display a wrong, fictitious, altered, or obscured license plate. *See* Tex. Transp. Code Ann. § 504.945. In evaluating the persons against whom the statute was intended to apply, we give the term "displays" its plain meaning. *See Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim.App.1999) (giving words their plain meaning when a statute does not define the words used); *see also* Tex. Gov't Code Ann. § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Although the statute does not define "displays[,]" it is commonly defined by a dictionary of ordinary use to mean "exhibiting or showing of something[.]" WEBSTER'S THIRD NEW INT'L DICTIONARY 654 (2002). A person who chooses to drive a car bearing an obscured plate on a public road has exhibited or shown the car and the plate that is on the car in public. In our view, a person of common intelligence need not guess at whether section 504.945 applies to drivers, so it is not unconstitutionally vague. *See Baker v. State*, 478 S.W.2d 445, 449 (Tex. Crim.App.1972).

We conditionally hold that section 504.945 is not unconstitutionally vague on its face or as applied to Martinez under the facts and circumstances in this case. Having carefully considered Martinez's arguments, we hold the trial court did not abuse its discretion by denying Martinez's motion to suppress. We overrule Martinez's sole issue, and we affirm his conviction.

AFFIRMED.

---

4. Texas Transportation Code section 502.409 was redesignated as section 502.475 and amended by Act of May 29, 2011, 82nd Leg., R.S., ch. 1296, § 159, 2011 Tex. Sess. Law Serv. 3619, 3685 (West) (removing license plate), and amended to read as the current version at issue in this case by Act of May 29, 2011, 82nd Leg., R.S., ch. 1296, § 223, sec. 504.945, 2011 Tex. Sess. Law Serv. 3619, 3702-703 (West).