In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00400-CR**
_____

**MOSES GILBERT RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-04-05187-CR**

**MEMORANDUM OPINION**

A grand jury indicted Appellant Moses Gilbert Rodriguez for the offense of manufacture or possession of a controlled substance—namely dihydrocodeinone—with intent to deliver in an amount of 28 grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.114 (West 2017). After the trial court denied Rodriguez's motion to suppress, Rodriguez pleaded guilty. The trial court found Rodriguez guilty and assessed punishment at ten years' confinement. Rodriguez

appealed, and in five issues he challenges the trial court's denial of his motion to suppress. We affirm.

<u>Hearing on Motion to Suppress</u>

The only witness to testify at the hearing on the motion to suppress was Corporal Trace Turner, with the Texas Highway Patrol. Turner agreed he was on patrol on April 18, 2018, when he pulled Rodriguez over after observing Rodriguez's vehicle slow down "drastically," change "two or three" lanes, drift onto the shoulder, and drive on the improved shoulder with both of the right-side tires completely crossing the white fog line. Turner testified about his understanding of the offense of driving on an improved shoulder:

> My understanding of driving on the improved shoulder when prohibited is on a roadway such as I-45, which I believe is a five-lane road through our area going southbound and northbound, it's referring to the right-hand shoulder which we do have. Basically, my understanding of that offense would be if any portion of their tires crosses completely over the fog line or the white line.

According to Turner, he does not make a traffic stop of a vehicle that drives on the white line or a little bit over, but only if the tires completely pass the white fog line and go onto the shoulder.

Before initiating the stop of Rodriguez that day, Turner's partner ran the vehicle's license plate and discovered that the vehicle was registered to Moses Rodriguez and that Rodriguez did not have a valid driver's license. Turner identified

2

Rodriguez as the driver he stopped that day and he identified Rodriguez by a Texas ID card. According to Turner, he told Rodriguez that he stopped him for driving on an improved shoulder, and Rodriguez did not disagree or contest what Turner said.

Turner testified that he found at least two pill bottles in Rodriguez's jacket, and one was labeled as hydrocodone, and it appeared to be a valid prescription that belonged to Rodriguez. Turner also found a baggie with about 100 pills of hydrocodone and testified "Well, if you have the pills separated into a bag, and you're not -- you do not have that actual prescription, you cannot prove that you have that prescription, at that point in time it would give an officer probable cause to place that person under arrest." Turner testified that, based on his training and experience, it is not usual for people who have a valid prescription pill bottle also to keep pills in a separate bag and keeping pills in a separate bag might suggest to him that the person could be selling or using them and that the person does not have a prescription for them. According to Turner, Rodriguez did not remember the name of the doctor who had given him the valid prescription or where he had the prescription filled.

Turner agreed that Rodriguez consented to Turner searching his phone, and Turner found many messages from contacts asking Rodriguez to sell the prescription pills. Turner also testified that Rodriguez told him he was selling the pills for $8

3

apiece. Turner agreed that Rodriguez was arrested for possession of the pills in the baggie with intent to deliver. According to Turner, he weighed the plastic baggie as containing forty-six grams of acetaminophen hydrocodone.

Turner testified that his patrol vehicle is equipped with a front-facing in-car camera and the camera recorded his interaction with Rodriguez. Turner agreed that State's Exhibit 1 was a fair and accurate representation of what the view was from his vehicle that day. State's Exhibit 1 was admitted into evidence and played at the hearing. Turner testified that the video showed Rodriguez's left tires close to the middle of the driving lane which he regarded as "a very good indication the vehicle is on the improved shoulder[,]" based on the size of the vehicle.

The defense entered into evidence as Defense Exhibit 1 a demonstrative video made several months after Trooper Turner stopped Rodriguez to show how Corporal Turner's point of view was imperfect because Turner was not directly behind Rodriguez but in the lane to Rodriguez's left. The defense offered no witnesses.

The trial court entered findings of fact that state, in relevant part:

[] At the suppression hearing, the Court heard testimony from Trooper Trace Turner of the Texas Department of Public Safety Highway Patrol Division.

[] The Court found credible Trooper Turner's testimony that on April 18, 2018, Trooper Turner stopped the Defendant's vehicle due to Trooper Turner observing the Defendant committing a violation of Texas law.

4



[] Trooper Turner observed the Defendant driving the Defendant's vehicle on Interstate Highway 45, within the jurisdictional boundaries of Montgomery County, Texas.

[] Trooper Turner observed the right tires of the Defendant's vehicle drift across the right solid white line of the far right lane of traffic, and drive on the improved shoulder.

[] Trooper Turner's partner ran the Defendant's vehicle license plate, and learned that the Defendant owner did not have a valid driver's license at the time Trooper Turner observed the Defendant's vehicle drive on the improved shoulder.

[] Trooper Turner conducted a traffic stop of the Defendant's vehicle following Trooper Turner observing the Defendant's vehicle drive on the improved shoulder.

[] Trooper Turner determined the driver of the Defendant's vehicle to be the Defendant.

In its conclusions of law, the trial court found that the traffic stop was supported by reasonable suspicion that Rodriguez had driven on the improved shoulder, in violation of section 545.058 of the Texas Transportation Code, as well as the "objective reason" that Rodriguez did not have a valid driver's license at the time.[1]

---

[1] The trial court also concluded that no enumerated exception to section 545.058 applied. Section 545.058 of the Transportation Code defines the infraction of "Driving on Improved Shoulder" as well as enumerated exceptions:

(a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
(1) to stop, stand, or park;

In five issues, Rodriguez argues the trial court erred in denying his motion to suppress. His first issue argues that the traffic stop was illegal because the evidence shows his tires did not cross the white fog line. His second issue argues that the trial court erred in concluding the stop was lawful because Rodriguez did not have a valid

_____

(2) to accelerate before entering the main traveled lane of traffic;

(3) to decelerate before making a right turn;

(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;

(5) to allow another vehicle traveling faster to pass;

(6) as permitted or required by an official traffic-control device; or

(7) to avoid a collision.

(b) An operator may drive on an improved shoulder to the left of the main traveled portion of a divided or limited-access or controlled-access highway if that operation may be done safely, but only:

(1) to slow or stop when the vehicle is disabled and traffic or other circumstances prohibit the safe movement of the vehicle to the shoulder to the right of the main traveled portion of the roadway;

(2) as permitted or required by an official traffic-control device; or

(3) to avoid a collision.

(c) A limitation in this section on driving on an improved shoulder does not apply to:

(1) an authorized emergency vehicle responding to a call;

(2) a police patrol; or

(3) a bicycle.

Tex. Transp. Code Ann. § 545.058 (West 2011).

driver's license and that this conclusion was in error because the trooper testified that the only basis for the stop was driving on an improved shoulder. Appellant's third issue argues that the trial court erred in admitting statements made to Turner during a "custodial interrogation" because Rodriguez was detained and not free to leave and Turner did not provide *Miranda* warnings. Appellant's fourth issue argues that the trial court failed to suppress physical evidence seized—the forty-six grams of acetaminophen/hydrocodone in a baggie—because Rodriguez had a prescription for hydrocodone and Turner testified that it was not illegal to carry prescribed medications outside a pill bottle. In his fifth issue, Rodriguez argued that the trial court erred in failing to suppress evidence of intent to deliver a controlled substance when no delivery was being made and the circumstantial evidence was based on an illegal stop, search, and seizure and on statements made during a custodial interrogation without *Miranda* warnings.

## Applicable Law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

7

At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48. We also review de novo "whether the totality of [the] circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d at 48-49.

When, as here, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Traffic stops require an officer to have a reasonable suspicion that the person detained is, has been, or will soon engage in criminal activity. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *Crockett v. State*, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991). The standard is whether, based on facts articulated by the officer and the totality of the circumstances, an objectively reasonable officer would have developed suspicion that an offense was in progress or had occurred. *Id.*; *Martinez v. State*, 500 S.W.3d 456, 465 (Tex. App.—Beaumont 2016, pet. ref'd) (citing *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005)).

9

A motion to suppress evidence is a specialized means of objecting to the admissibility of evidence. *Galitz v. State*, 617 S.W.2d 949, 952 n.10 (Tex. Crim. App. 1981). Thus, a motion to suppress must meet the requirements of an objection. *Carroll v. State*, 911 S.W.2d 210, 218 (Tex. App.—Austin 1995, no pet.); *Mayfield v. State*, 800 S.W.2d 932, 935 (Tex. App.—San Antonio 1990, no pet.). To preserve an issue involving the admission of evidence for appellate review, the objection must inform the trial court why, or on what basis, the evidence should be excluded, but generally need not spout "magic words." *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009); *see also* Tex. R. App. P. 33.1(a)(1)(A) (error is preserved when the record shows that a "complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[]").

The objection must be clear enough that opposing counsel and the trial court have an opportunity to address or correct the purported deficiency. *Ford*, 305 S.W.3d at 533. It is well established that "shotgun" objections generally citing many grounds for an objection without argument preserve nothing for appeal. *Johnson v. State*, 263 S.W.3d 287, 290 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd, untimely filed);

10

*Webb v. State*, 899 S.W.2d 814, 818 (Tex. App.—Waco 1995, pet. ref'd). Additionally, an issue on appeal that does not match the objection made at the suppression hearing or trial presents nothing for appellate review. *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999); *Harris v. State*, 475 S.W.3d 395, 403 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd).

## Analysis

Rodriguez's first issue argues that the traffic stop was illegal because the evidence shows his tires did not cross the white fog line. However, Trooper Turner testified that he saw both of Rodriquez's right tires completely cross the white fog line and the vehicle was completely over the line and driving on the shoulder. The videos from the trooper's vehicle were admitted into evidence and played at the hearing. In its findings of fact, the trial court found Trooper Turner credible and that the trooper had observed Rodriguez drive on the improved shoulder. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court's determination that Rodriguez drove on the improved shoulder in violation of the Transportation Code is supported by the record. *See Kelly*, 204 S.W.3d at 818. Thus, based on the facts Trooper Turner articulated at the hearing and the totality of the circumstances, the trial court would not have erred in

11

concluding that an objectively reasonable officer would have suspected that an offense was in progress or had occurred. *See Jaganathan*, 479 S.W.3d at 247; *Martinez*, 500 S.W.3d at 465. We overrule Rodriguez's first issue.

Rodriguez's second issue in this appeal argues that the trial court erred in concluding the stop was lawful because Rodriguez did not have a valid driver's license because the trooper testified that the only basis for the stop was driving on an improved shoulder. At the hearing, Trooper Turner testified that his partner ran the license plates for Rodriguez's vehicle before the traffic stop and determined that the vehicle was registered to Rodriguez and that Rodriguez did not have a valid driver's license at the time.

"The test for reasonable suspicion is an objective one that focuses solely on whether an *objective* basis exists for the detention and disregards the officer's *subjective* intent." *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013) (emphasis added) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)). The record supports a conclusion that, under the totality of the circumstances, an objectively reasonable officer would have developed suspicion that the offense of driving without a valid license was in progress or had occurred. *See Jaganathan*, 479 S.W.3d at 247; *Martinez*, 500 S.W.3d at 465. Turner's testimony that his subjective intent was to make the traffic stop

12

based on driving on the improved shoulder does not change the reasonable-suspicion analysis. *See Kerwick*, 393 S.W.3d at 274. On this record, and deferring to the trial court's finding of facts, the trial court did not err in concluding that Rodriguez's lack of a valid driver's license constituted an objective reason to support reasonable suspicion for the traffic stop. *See Jaganathan*, 479 S.W.3d at 247. We overrule Rodriguez's second issue.

We overrule Rodriguez's remaining issues because we conclude that he failed to preserve error on the remaining issues. Rodriguez's motion to suppress largely consists of undeveloped "shotgun" objections that do not preserve error. *See Johnson*, 263 S.W.3d at 290. At the suppression hearing, Rodriguez argued only that he was not driving on the shoulder and that it was not "objectively reasonable" for the trooper to stop Rodriguez for an invalid driver's license because that was not the trooper's stated reason for stopping Rodriguez. *See id.* at 289-90 (A motion to suppress asserting many grounds that were not supported by arguments or that does not bring to the trial court's attention the issue raised on appeal does not preserve a complaint for appellate review.).

As to Rodriguez's third issue—that certain statements should have been suppressed because they were the result of custodial interrogation and the trooper did not give him *Miranda* warnings—the record shows that Rodriguez did not make

13

this argument at the suppression hearing. Rodriguez's motion to suppress argued that "[a]ny statement made by the Defendant was not made freely nor voluntarily[,]" but the motion did not bring to the trial court's attention that his statements were made during a custodial investigation and that he was never given *Miranda* warnings.

Generally, a routine traffic stop does not place a person in custody for *Miranda* purposes. *Ortiz*, 382 S.W.3d at 372 (citing *State v. Stevenson*, 958 S.W.2d 824, 828 (Tex. Crim. App. 1997)). A traffic stop may escalate from a non-custodial detention into a custodial detention when formal arrest ensues or a detainee's freedom of movement is restrained to the degree associated with a formal arrest. *Id.* We evaluate whether a person has been detained to the degree associated with arrest on an ad hoc, or case-by-case, basis. *Id.* In making the custody determination, the primary question is whether a reasonable person would perceive the detention to be a restraint on his movement comparable to a formal arrest, given all the objective circumstances. *Id.* Even assuming Rodriguez had preserved error on this point, we conclude based on the record that the trial court would not have erred in finding that no custodial interrogation had occurred. *See id.*

As to Rodriguez's fourth and fifth issues, we similarly conclude that Rodriguez did not assert these arguments in his motion to suppress or at the

suppression hearing. Having overruled all Rodriguez's issues, we affirm the trial court's ruling.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 7, 2019
Opinion Delivered October 16, 2019
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.