**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00386-CR**
_____

**THE STATE OF TEXAS, Appellant**

**V.**

**JOSHUA EDWARD SONNIER, Appellee**

**On Appeal from the County Court at Law No. 2**
**Orange County, Texas**
**Trial Cause No. E110286**

**MEMORANDUM OPINION**

The State of Texas (State or Appellant) filed this appeal challenging the trial court's order granting motions to suppress and quash filed by Joshua Edward Sonnier (Sonnier or Appellee or Defendant). Sonnier was charged by information with the offense of driving while intoxicated with a blood alcohol concentration level of 0.15 or more (second offense). Sonnier filed motions to suppress evidence obtained as a result of the stop and to quash the blood search warrant, arguing there

1

was no reasonable suspicion for the initial traffic stop which led to Sonnier's eventual arrest because Sonnier did not commit a traffic violation. According to Sonnier, he stopped his vehicle short of the intersection boundary, affording the officer the full right of way to pass without incident. Sonnier argued that because the initial stop was without "reasonable suspicion" and because he did not fail to yield the right of way to the officer, the blood search warrant was also improper, based on a false affidavit, and the test results must be quashed. The State did not file a written response to the motions.

At the suppression hearing, the State called one witness, Officer Mulhollan with the City of Orange Police Department (the Officer). The Officer testified that on the evening of March 12, 2017, he was driving his patrol vehicle eastbound on the access road of I-10, which is also called South Lutcher Drive. According to State's Exhibit 1, the dash camera and body camera video of the stop admitted into evidence at the hearing indicates the access road is a two-lane one-way road and 23rd Street is a side road that runs perpendicular to the access road, with two lanes of traffic running north and south. The traffic proceeding onto the access road from 23rd Street has a stop sign at the intersection with the access road, requiring vehicles traveling northbound to stop and yield the right of way to the traffic on the access road. The Officer testified that as he travelled eastbound in the outside lane on the

access road, he observed ahead of him a truck driven by Sonnier come to a stop at the stop sign on 23rd Street. The Officer testified that he initiated a traffic stop because after Sonnier's vehicle came to a stop, it then pulled out in front of the Officer. The Officer explained:

Q. Okay. And why were you stopping this vehicle?

A. It failed to yield right-of-way at a stop sign.

Q. And when you say, "it failed to yield right-of-way at a stop sign," explain to us what happened that led up to that.

A. I was traveling eastbound on the north service road, I-10 -- South Lutcher Drive. This vehicle was traveling northbound on 23rd Street. That vehicle had a stop sign at this intersection. I had no traffic control[] devices. It did come to a stop, but it pulled out in front of me as I -- as I was passing by.

According to the Officer, he observed the vehicle appear to "lurch[] forward[]" and he believed that the driver was going to pull out in front of him onto the service road. The Officer testified that he believed a collision was about to occur, and he applied his brakes and brought his patrol vehicle to a stop. The Officer turned his patrol lights on and initiated a traffic stop of the truck, motioning for the truck to pull out of the road and into the gas station parking area that was immediately adjacent to both roadways. The Officer testified that after he stopped Sonnier he

3

could see that Sonnier had watery, bloodshot eyes, slow, slurred speech, and Sonnier smelled like alcohol.

On the video of the stop, the Officer told Sonnier, "you almost pulled right out in front of me just now" and "you almost caused a major accident." The Officer then told another officer at the scene,

> he pulled right out in front of me . . . he pulled into the intersection[,] I slammed on my brakes, and hit my lights. I thought we were going to have a collision . . . he didn't go all the way . . . he sees me turn on my lights and stops . . . I was so mad I couldn't read the plate.

The Officer conducted a nystagmus test and then attempted to conduct other standard field sobriety tests, but Sonnier refused to perform the other tests. When the Officer asked Sonnier if he was on "anything other than alcohol[,]" Sonnier said "No." Sonnier also stated that he had "been drinking." The Officer arrested Sonnier for driving while intoxicated. Sonnier also refused to consent to provide a breath or blood specimen. The Officer prepared an affidavit for a search warrant and then obtained a search warrant from a magistrate judge. Pursuant to the warrant, Sonnier's blood was drawn and sent for analysis and Sonnier was subsequently charged.

At the suppression hearing, after the Officer testified, the trial court then recessed to review State's Exhibit 1. After a recess, the trial court granted the

motions to quash and to suppress the evidence obtained from the stop and stated the

basis for the rulings on the record:

> And I have been reviewing -- meaning I've watched it about four or five times now -- everything leading to the stop of Mr. Sonnier's truck. It -- it happened, basically, as Officer Mulhollan described here on the stand a few moments ago. For the most part -- except for the last part of Mr. Mulhollan's explanation -- it happened as is described by Mr. Hall in his memorandum of law in support of quashing the blood warrant. It did not happen, though, as is set out in the affidavit for a search warrant.
>
> That affidavit in Paragraph 5 describes the truck -- which later was found to be Mr. Sonnier's truck -- it says, "was traveling northbound on 23rd Street approaching a stop sign at this intersection. This truck failed to yield right-of-way and pulled out in front of" -- it says parole vehicle, but that is understood to be patrol vehicle -- "nearly causing a collision."
>
> And going into Paragraph 6, "I was, however, able to stop my patrol vehicle and avoid collision. I then conducted a traffic stop on the truck."
>
> Mr. Sonnier's truck, however -- based upon my repeated view of State's Exhibit No. 1 -- did not pull out in front of Officer Mulhollan's patrol vehicle. It simply did not. There was not a stop line at the stop sign. There was no stop line anywhere. What we're dealing with here as far as traffic control device was a stop sign on 23rd Street. What is referred to as South Lutcher Drive is otherwise known as the feeder road to Interstate 10, and the officer was on South Lutcher Drive -- or the feeder road. This is a T-intersection.
>
> So, the officer did not have to stop. I understand the officer slowing down. I can understand the officer stopping; but the vehicle that Mr. Sonnier was driving did not, "pull out in front of," the officer's patrol vehicle.

In the written order granting Sonnier's motions, the trial court stated the

following in relevant part:

5

. . . The following account is what the Court observed on [State's Exhibit 1]: Officer [Mulhollan] is traveling on Lutcher Drive and is approaching 23rd Street. The vehicle soon identified as the defendant's truck is traveling on 23rd Street and is approaching the stop sign at Lutcher Drive. The truck stops at the stop sign then pulls forward after the stop as the officer nears that "T" intersection. It appears as if the truck is going to pull out onto Lutcher Drive. In response to the truck's movement toward Lutcher Drive after the initial stop; the officer slows down, pulls over onto 23rd Street, and stops. The truck, although it appeared to be pulling out onto Lutcher Drive, stops a few feet short of Lutcher Drive as the patrol car approaches. The truck does not "pull out in front of" officer Mulhollan's patrol vehicle. The truck does not reach Lutcher Drive, therefore, the truck does not proceed into the "T" intersection of Lutcher Drive and 23rd Street. The traffic violation described by the officer in his testimony at the hearing and in his Affidavit for Search Warrant simply does not occur. The traffic violation of failure to yield right-of-way is "almost" committed and it actually appears that the violation is going to take place, but the violation never materializes. A screenshot of the video showing the positions of the patrol unit and the truck is attached to this Order as EXHIBIT A.

The Defendant's Motion to Quash the Blood Search Warrant and the Motion to Suppress is GRANTED.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).

At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial

6

court may choose to believe or to disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Crain*, 315 S.W.3d at 48. We also review de novo "whether the totality of [the] circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Crain*, 315 S.W.3d at 48-49.

When, as here, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim.

7

App. 2006). If the trial court fails to make explicit findings, we infer a fact finding to support the trial court's ruling when the evidence supports the implied finding. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013); State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).[1]

Traffic stops require an officer to have a reasonable suspicion that the person detained is, has been, or will soon engage in criminal activity. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2014); *Crockett v. State*, 803 S.W.2d 308,

---

[1] The State argues on appeal that the trial court should have given deference to the magistrate who issued the search warrant for the blood draw. The search warrant was issued pursuant to an affidavit prepared by Officer Mulhollan. When reviewing an affidavit that is made in support of a search warrant, the trial court should ordinarily defer to all reasonable inferences that the issuing magistrate could have made to establish a fair probability of an offense. *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). Trial courts apply a highly deferential standard when reviewing a magistrate's decision to issue a warrant. *Id.* Here, the State did not make this argument at the trial court and therefore the argument was not preserved. Tex. R. App. P. 33.1(a).

311 (Tex. Crim. App. 1991). The standard is whether, based on facts articulated by the officer and the totality of the circumstances, an objectively reasonable officer would have developed suspicion that an offense was in progress or had occurred. *Id.*; *Martinez v. State*, 500 S.W.3d 456, 465 (Tex. App.—Beaumont 2016, pet. ref'd) (citing *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005)). The State argues on appeal that Sonnier failed to yield the right of way and that Sonnier's "unsafe progression, which interrupted the flow of approaching traffic with the right-of-way, gave [Officer] Mulhollan reasonable suspicion to stop and detain Appellee." The State explains in its appellate brief

> As Appellee moved toward the intersection, Mulhollan feared that he would crash into Appellee's vehicle had he not stopped. [] In response to Appellee's unsafe procession toward South Lutcher Driver and to avoid a collision, Mulhollan brought his patrol vehicle to a stop although he had the right-of-way to proceed unimpeded. []

The question is not whether Sonnier committed a traffic offense, but whether a reasonable officer based upon the totality of the circumstances would have believed that an offense occurred or was in progress. *See Jaganathan*, 479 S.W.3d at 247. The trial court found that a traffic violation did not occur and that "[t]he traffic violation described by the officer in his testimony at the hearing and in his Affidavit for Search Warrant simply does not occur." We conclude that both findings were reasonably supported by the record. Affording the prevailing party the

9

strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence, the evidence also supports the trial court's implied finding that a reasonable officer, based on the totality of the circumstances, would not have believed that an offense occurred or was in progress. *Duran*, 396 S.W.3d at 571; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *Martinez*, 500 S.W.3d at 465. Viewing the evidence in the light most favorable to the trial court's ruling and giving deference to the trial court on credibility determinations and determinations of historical facts, we cannot say that the trial court abused its discretion by granting the motion to suppress and motion to quash in this case. *See Crain*, 315 S.W.3d at 48. Accordingly, we overrule the State's sole issue on appeal and affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 3, 2019
Opinion Delivered June 12, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.